UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SNAP-ON BUSINESS SOLUTIONS, INC. | ) | |
| | ) | CASE NO. 5:09-CV-01547-JG |
| Plaintiff, | ) | |
| | ) | JUDGE JAMES S. GWIN |
| v. | ) | |
| | ) | |
| O'NEIL & ASSOCIATES, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DECLARATION OF JEWEL M. DRASS IN SUPPORT OF SNAP-ON'S OPPOSITION TO O'NEIL'S MOTION FOR SUMMARY JUDGMENT

I, Jewel M. Drass, hereby declare as follows:

1.      I am over twenty-one (21) years of age and, except as may be qualified below, I have personal knowledge of the matters reflected herein and am competent to testify thereto.

2.      I am a Senior Program Manager for Plaintiff Snap-on Business Solutions, Inc. ("Snap-on").  As such, I have personal knowledge of the websites on which Snap-on hosted data for Mitsubishi Caterpillar Forklift ("MCF") and its related entities.

3.      The screen shots of the website log-in/password screens attached as Exhibit 22 to Snap-on's *Memorandum in Opposition to O'Neil's Motion for Summary Judgment* (the "Memorandum") are true and accurate representations of the MCF websites as they existed between February 2009 and July 2009.

4.      Each of the six MCF websites contained and incorporated an End User License Agreement ("EULA") which governed the terms of use of the MCF websites.

5.      The EULA attached as Exhibit 23 to the Memorandum is a true and accurate representation of the respective EULAs as they existed on the MCF websites between February 2009 and July 2009.

6.      Users of each of the six MCF websites had access to the EULA when entering the websites via a link to the EULA.  Each MCF website stated that: "The use of and access to the information on this site is subject to the terms and conditions set out in our legal statement."

7.      If O'Neil & Associates, Inc. ("O'Neil") accessed the data hosted on Snap-on's websites by first going through the log-in/password home page, O'Neil would have seen the bright green arrow just below the log-in/password boxes, which served as a link to that site's EULA.

8.      Thus, O'Neil would have been able to read the EULAs for the respective MCF websites before entering.

9.      The EULAs are identical for each of the six websites that O'Neil accessed using its scraper tool.

10.     O'Neil was not authorized to access the MCF websites hosted by Snap-on because O'Neil was not and is not "an authorized dealer or customer of a manufacturer or other organization that has licensed Net-Compass software from Snap-on," as described in Paragraph 7 of the EULA.

11.     Under the License Agreement with MCF, Snap-on receives raw data primarily in the form of paper catalogs for MCF's various forklifts.

12.     Snap-on starts by converting the paper catalogs into digital information through a keying process.

CLE - 2297137.1                                    2

13.　　Once the raw data has been converted into digital information, Snap-on creates a data tree, which was designed by Snap-on.  The data tree is then ordered by product lines, models, etc.

14.　　Snap-on also creates "hot spots" for any images included in the catalogs.  Hot spots and Snap-on's method of creating them is proprietary and a trade secret of Snap-on.

15.　　Hot spots are manually created with each one done by hand.  Hot spots are not included with the raw data and are wholly original and proprietary to Snap-on.

16.　　Snap-on also creates "NodeID" links, which are used by Snap-on to link data from level to level in a data tree.  NodeIDs are not included with the raw data and are wholly original and proprietary to Snap-on.

17.　　As part of this litigation, I inspected and reviewed data tables and the scraper tool provided by O'Neil & Associates in discovery.  The data tables are copies of the information that O'Neil obtained from the Snap-on servers using the scraper tool.

18.　　Based on my inspection and review of the data tables and scraper tool, the scraper tool walked Snap-on's proprietary data tree and copied any files, data, and links in the order designed and prepared by Snap-on.

19.　　The scraper tool went down the data tree (also known as "navigation") and checked at each step to see if there was live data, and if so, it wrote it into a table.

20.　　Depending on the level of the navigation, the scraper tool also located images and downloaded the images and the hot spots, and wrote the data into a table.

21.　　The scraper tool also downloaded all links that tied the data content together, which had been designed and was proprietary to Snap-on.

CLE - 2297137.1　　　　　　　　　　　　　　　3

22.     In the tables provided by O'Neil, there is a "LinkURL" field that shows the uniform resource locator ("URL") for the Snap-on websites on its servers for each piece of enhanced data obtained by the scraper tool.

23.     Within the LinkURL field O'Neil also captured the NodelD, which is created by and proprietary to Snap-on.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 15, 2010

_____
Jewel M. Drass

CLE-2297137.1