UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SNAP-ON BUSINESS SOLUTIONS, INC., <br><br> Plaintiff <br><br> vs. <br><br> O'NEIL & ASSOCIATES, INC., <br><br> Defendant | CASE NO. 5:09-CV-1547 <br><br> JUDGE JAMES S. GWIN <br><br> **DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE CERTAIN OF DEFENDANT'S "TECHNICAL" EXPERTS** |

Defendant O'Neil & Associates, Inc. ("O'Neil") hereby opposes the Motion *In Limine* to Exclude Certain of Defendant's "Technical" Experts (Doc. # 58) filed by Plaintiff Snap-on Business Solutions, Inc. ("Snap-on").  For the reasons that follow, Snap-on's Motion is premature and otherwise fails to articulate a basis for this Court to exclude the expert testimony of David Stackhouse ("Stackhouse") and Armando Monzon ("Monzon").  Snap-on's Motion, therefore, must be denied.

In this case, Snap-on claims that O'Neil inappropriately reclaimed data, using a reclamation tool, from several web sites that were hosted by Snap-on for MCF.  *See, generally, Amended Complaint* (Doc. # 31).  Snap-on claims, among other things, that O'Neil's use of the reclamation tool caused various damage to Snap-on, including damage to Snap-on's servers and other server or network down time.  *Id.*  By using the reclaimed data, Snap-on claims that O'Neil gained a competitive advantage in O'Neil's creation of an on-line parts catalog for MCF – a service, purportedly, previously provided to MCF by Snap-on.  *Id.*

At its essence, Snap-on's Motion argues that because Stackhouse and Monzon are not experts with regard to reclamation tools and because Stackhouse and Monzon are not experts on databases, they should not be allowed to testify as experts in any area.  Snap-on's arguments lack

1

merit. Both Stackhouse and Monzon are qualified to offer expert testimony; their testimony is both reliable and relevant.

### A. STACKHOUSE.

Stackhouse has been O'Neil's director of information systems for approximately 4 years. (Stackhouse depo. 9, relevant portions attached as Ex. A). In addition to his professional experience, Stackhouse has a checkpoint firewall certification for systems administration and an ITIL certification (information technology/information library). *Id.* 12-13. Contrary to what Snap-on suggests, Stackhouse was not designated as O'Neil's Fed. R. Civ. P. 30(b)(6) representative. *Id.* at 18, 20-21; *see* Snap-on Motion (Doc. # 58), 3-4.

Stackhouse supported the MCF project, in terms of the reclamation data and in terms of development, by ensuring that O'Neil maintained the appropriate infrastructure. (Stackhouse depo. 26-28, 110-112, 135). Stackhouse, by virtue of his education, training and experience, is an expert in the areas of computer networks and infrastructure. *Id.* at 127-129. In fact, Snap-on concedes Stackhouse's qualifications in these areas. *See* Snap-on Motion (Doc. # 58), p. 4.

With regard to the reclamation of data, Stackhouse provided support by providing necessary server space, allocating appropriate bandwidth and by implementing access to the internet. (Stackhouse depo. 26-28, 50-52). With regard to development, Stackhouse allocated the necessary server space and ensured the technical delivery of the product developed by O'Neil for MCF. *Id.* at 110-112. For both the reclamation of data and development, Stackhouse offered his "expertise" in the areas of firewalls, connectivity, bandwidth, switching, VLANing, servers, platforms, hardware, software and operating systems. *Id.* at 127-129.

### B. MONZON.

Monzon has been the software development manager at O'Neil for approximately the last 5 years. (Monzon depo. 10-11, relevant portions attached hereto as Ex. B). In that capacity, Monzon manages a technical team that creates software applications for O'Neil's customers. *Id.* at 10. Monzon has a B.S. in Computer Engineering. *Id.* at 13. Although he did not access it himself, Monzon has seen the on-line parts catalog created by Snap-on for MCF. *Id.* at 36-37.

Monzon was involved in the high level design of the reclamation tool. (Monzon depo. 68, 95-96). With regard to the reclaimed data, Monzon was responsible for determining how to transform that data so that it could be rendered most efficiently by O'Neil to the MCF end users who would rely upon it. *Id.* at 68-70.

### C. LAW AND ARGUMENT.

"The Federal Rules of Evidence provide that expert witnesses may only testify where that testimony 'will assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Surles v. Greyhound Lines, Inc.,* 474 F.3d 288, 293 (6th Cir. 2007); *citing* Fed. R. Evid. 702. "As a threshold matter, expert witnesses must be qualified to testify to a matter relevant to the case, and a proffering party can qualify their expert with reference to his 'knowledge, skill, experience, training or education.'" *Id.*

"In *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 597 (1993), the Supreme Court held that scientific evidence proffered by an expert must be 'relevant to the task at hand' and must rest 'on a reliable foundation.'" *Surles,* 474 F.3d at 294. "The Supreme Court subsequently affirmed that *Daubert's* principles apply more generally to all expert testimony admissible under Fed. R. Evid. 702 in *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 148 (1999)." *Id.* "The maxims set forth in *Daubert* and *Kumho Tire* have since been incorporated in Fed. Evid. R. 702, which now permits qualified experts to proffer their expert opinions where:

(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Id.* at 294-295; *citing* Fed. R. Evid. 702.

"In essence, *Daubert* and its progeny have placed the district courts in the role of 'gatekeeper,' charging them with evaluating the relevance and reliability of proffered expert testimony with heightened care. In discharging that role, district courts possess broad discretion to make admissibility determinations." *Surles,* 474 F.3d at 295; *citing Pride v. BIC Corp.,* 218 F.3d 566, 578 (6th Cir. 2000). "*Daubert* itself set forth a list of non-exhaustive factors to guide district courts in assessing reliability." *Id.; citing Daubert,* 509 U.S. at 593-94. "However, district courts need not adhere to those enumerated factors, as '[t]he inquiry * * * is a flexible one.'" *Id.; citing Daubert,* 509 U.S. at 594. "Indeed, 'the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination.'" *Id.; citing Kumho Tire,* 526 U.S. at 142. "[W]here non-scientific expert testimony is involved, 'the *[Daubert]* factors may be pertinent,' or 'the relevant reliability concerns may focus upon personal knowledge or experience.'" *Id.* (citations omitted). "The gatekeeping inquiry is context-specific and 'must be tied to the facts of a particular case.'" *Id.; citing Kumho Tire,* 526 U.S. at 150.

When expert testimony is based upon "technical or other specialized knowledge," the *Daubert* factors "cannot readily be applied to measure the reliability of such testimony." *Surles,* 474 F.3d at 295. When an expert explains his or her experience, explains how his or her experience leads to the conclusion reached, "why that experience is a sufficient basis for the opinion, and how that experience is readily applied to the facts," the expert testimony is sufficiently reliable. *Id.*

Stackhouse and Monzon have technical and other specialized knowledge. This knowledge, in addition to their experience, provides a sufficient basis for their expert testimony with regard to: firewalls, connectivity, bandwidth, switching, VLANing, servers, platforms, hardware, software and operating systems from the standpoint of the reclamation tool and from the standpoint of development. Monzon, who was personally involved in the high level design of the reclamation tool, certainly has technical or other specialized knowledge – in addition to experience – to offer expert testimony on that subject. Each of these issues is relevant to this case. Moreover, Stackhouse and Monzon have demonstrated sufficient knowledge, skill, experience and training to testify in these areas. The expert testimony of Stackhouse and Monzon must be permitted.

## **CONCLUSION**

For all of the foregoing reasons, Snap-on's Motion must be denied.  If the proper foundation and factual predicates are laid, Stackhouse and Monzon are both qualified to testify as experts within their areas of expertise.  Snap-on's failure to develop the proper foundation and factual predicates at deposition does not render the expert testimony of Stackhouse and Monzon inadmissible.  Snap-on's Motion must be denied.

        Respectfully submitted,

        /s/ ALAN B. PARKER
        _____
        ALAN B. PARKER (0040008)
        ROY A. HULME (0001090)
        **Reminger Co., L.P.A.**
        1400 Midland Building
        101 Prospect Avenue, West
        Cleveland, Ohio  44115
        (216) 687-1311
        (Fax) (216)687-1841
        E-Mail:     aparker@reminger.com
                       rhulme@reminger.com

        /s/ MATTHEW L. SCHRADER
        _____
        MATTHEW L. SCHRADER (0074230)
        **Reminger Co., L.P.A**
        65 East State Street, 4th Floor
        Capitol Square
        Columbus, Ohio  43215
        (614) 228-1311
        (Fax) (614) 232-2410
        E-Mail:     mschrader@reminger.com

        Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2010, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                          */s/ MATTHEW L. SCHRADER*

                                          MATTHEW L. SCHRADER (0074230)

## DECLARATION

This Declaration is made pursuant to 28 U.S.C. § 1746:

1.     I am one of the attorneys for Defendant relative to the above-captioned case.

2.     I have personal knowledge of the statements set forth in this Declaration.

3.     The Exhibits attached hereto are true and correct copies of pages from the respective deposition transcripts taken relative to the above-captioned case.

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 31, 2010.

                                          */s/ MATTHEW L. SCHRADER*

                                          MATTHEW L. SCHRADER (0074230)