UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SNAP-ON BUSINESS SOLUTIONS, INC., | ) | CASE NO. 5:09-CV-1547 |
| | ) | |
| | ) | JUDGE JAMES S. GWIN |
| Plaintiff | ) | |
| | ) | **DEFENDANT'S MEMORANDUM IN** |
| vs. | ) | **OPPOSITION TO PLAINTIFF'S** |
| | ) | **MOTION TO STRIKE THE REPORT** |
| O'NEIL & ASSOCIATES, INC., | ) | **OF DEFENDANT'S EXPERT** |
| | ) | **RICHARD KEMMERER AND** |
| Defendant | ) | **MOTION *IN LIMINE* TO PRECLUDE** |
| | ) | **HIM FROM TESTIFYING AT TRIAL** |
| | ) | |

Defendant O'Neil & Associates, Inc. ("O'Neil") hereby opposes the Motion to Strike the

Report of Defendant's Expert Richard Kemmerer and Motion *In Limine* to Preclude Him From

Testifying at Trial (Doc. # 61) filed by Plaintiff Snap-on Business Solutions, Inc. ("Snap-on").

For the reasons that follow, Snap-on's Motion fails to articulate a basis for this Court to exclude

the expert testimony of Richard Kemmerer, Ph.D. ("Kemmerer").  Snap-on's Motion, therefore,

should be denied.

At the outset, is must be noted that Snap-on does not dispute the qualifications of

Kemmerer as an expert in this case.  *See, generally,* Snap-on's Motion (Doc. # 61).  Rather,

Snap-on seeks the exclusion of Kemmerer based solely upon Snap-on's position that his

disclosure was untimely pursuant to Fed. R. Civ. P. 26(a)(2)(C).  *Id.*  Snap-on seeks to exclude

Kemmerer's testimony pursuant to Fed. R. Civ. P. 37.  *Id.*  Thus, this is a "discovery dispute;"

not a challenge to Kemmerer's qualifications as an expert.

Fed. R. Civ. P. 37(a)(1) provides:

> "On notice to other parties and all affected persons, a party may move for an order
> compelling ***disclosure*** or discovery.  The motion must include a certification that
> the movant has in good faith conferred or attempted to confer with the person or

1

party failing to make ***disclosure*** or discovery in an effort to obtain it without court action." (Emphasis added).

Similarly, LR 37.1(a)(1) provides:

> "Discovery disputes shall be referred to a Judicial Officer ***only after counsel for the party seeking the disputed discovery has made, and certified to the Court the making of, sincere, good faith efforts to resolve such disputes."*** (Emphasis added).

Snap-on's Motion is devoid of any "certification," let alone any description, of efforts it took to resolve this discovery dispute informally, short of intervention by this Court. The reason for this omission is clear – Snap-on made no effort whatsoever to resolve this discovery dispute informally.

Regardless of whether Snap-on made any good faith attempt to resolve this discovery dispute, O'Neil's disclosure of Kemmerer was timely.  Snap-on is correct in two respects.  First, O'Neil timely disclosed Kemmerer as a technical expert on November 16, 2009.  (Snap-on's Motion (Doc. # 61), pp. 2-3).  Second, O'Neil provided Snap-on with Kemmerer's written report on March 17, 2010, two (2) months before the scheduled trial date.  *Id.* at p. 3.  Kemmerer's report was timely and his disclosure was appropriate as a rebuttal expert.

Greg Feezel ("Feezel"), Snap-on's director of network services and information security, was disclosed by Snap-on as a technical expert on October 26, 2009.  (Snap-on's Motion (Doc. # 61), p. 2).  Snap-on has taken the position that a written report by Feezel is not required because he is an employee of Snap-on.  *Id.*  Snap-on's position is incorrect – because of the nature of Feezel's testimony, and expert report was required and – to the extent that a "report" was authored by Feezel – Kemmerer's report is an appropriate rebuttal report.

On February 15, 2010, in its opposition to O'Neil's Motion for Summary Judgment, Snap-on produced a Declaration of Feezel (Doc. # 47-3) and a Declaration of Jewel Drass

2

("Drass") (Doc. # 47-2), Snap-on's senior program manager.  Kemmerer's report was provided

to Snap-on's counsel thirty (30) days after Snap-on produced these Declarations.  (Snap-on

Motion (Doc. # 61), pp. 2-3).  In his Declaration, among other things, Feezel describes how

O'Neil's reclamation tool worked and how the reclamation tool accessed various of the web sites

hosted by Snap-on for MCF.  (Feezel Decl. (Doc. # 47-3)).  In his Declaration, Drass goes even

further:

> "As part of this litigation, I inspected and reviewed data tables and the scraper
> tool provided by O'Neil & Associates in discovery.  The data tables are copies of
> the information that O'Neil obtained from the Snap-on servers using the scraper
> tool.
>
> Based upon my inspection and review of the data tables and scraper tool, the
> scraper tool walked Snap-on's proprietary data tree and copied any files, data, and
> links in the order designed and prepared by Snap-on."  (Drass Decl. (Doc. # 47-2),
> ¶¶ 17-18).[1]

Drass goes on, in his Declaration, to describe how the reclamation tool operated.  (Drass

Decl. (Doc. # 47-2), ¶¶ 19-23).  Snap-on concedes that Kemmerer's report "describes his

analysis of the data scraping tool at issue in this case."  (Snap-on's Motion (Doc. # 61), p. 4).

Kemmerer's report rebuts the testimony of Feezel and Drass and, therefore, was timely

disclosed.

In support of its Motion, Snap-on cites a singe case from the District of Hawaii, *Lindner

v. Meadow Gold Dairies, Inc.,* 249 F.R.D. 625 (D. Hawaii 2008).  *(See* Snap-on Motion (Doc. #

61), pp. 3-4).  Snap-on's reliance on *Lindner* is misplaced.  *Lindner* stands for the proposition

that a rebuttal expert may testify to rebut the testimony of an adverse expert once the adverse

---

[1] The Parties in this case agreed to a Protective Order.  Although the Protective Order has not been approved by this
Court, the Parties have been conducting this litigation pursuant to the Protective Order.  An executable version of
the reclamation tool, the source code for the reclamation tool and a summary of the operation of the reclamation tool
were produced by O'Neil and designated as "highly confidential – outside counsel only."  Snap-on never objected to
this designation.  Instead, it has violated the agreement of the Parties by allowing Drass (a Snap-on employee) to
"review" the "scraper tool."

expert testifies on the same subject. *Lindner,* 249 F.R.D. at 636. Moreover, an expert may be properly designated as a "rebuttal expert" regardless of whether the expert reviewed the report of the adverse expert. *Id.*

A recent case from the Western Division of Tennessee illuminates the "discovery" dispute that has arisen here. In *Bekaert Corporation v. City of Dyesrburg,* 256 F.R.D. 573 (W.D. Tennessee 2009), the district court decided whether an expert witness was specially retained for the purpose of the written report requirement. The district court notes that "the Rule clearly distinguishes between those experts who are retained/specially employed to provide testimony and those who are not." *Id.* at 575. "[W]hether an expert report is required seems to depend largely on whether the expert's opinion will be limited to testimony based upon his personal knowledge of the factual situation or whether the testimony will be based on information they utilized to develop specific opinion testimony, i.e. knowledge acquired or developed in anticipation of litigation." *Id.* at 576.

Although the expert considered by the district court in *Bekaert* was not "specially employed," the district court held that the expert was required to submit an expert report. *Bekaert,* 256 F.R.D. at 577-578. The basis for the district court's determination was the fact that the expert's testimony was "based solely on opinions formed in anticipation of litigation, not opinions formed based on his personal knowledge of the underlying dispute." *Id.* Because the testimony was derived "from information that enabled the expert to form an opinion in anticipation of litigation," the district court held that a written report was required. *Id.*

In the present case, the testimony of Feezel and Drass – most certainly – was derived from information (a review of the reclamation tool) that enabled Feezel and Drass to form their opinions about the operation of the reclamation tool in anticipation of litigation. Their testimony

goes to the heart of the issues in this case with regard to how the reclamation tool operated and what the reclamation tool reclaimed.  *(See* Feezel Decl. (Doc. # 47-3); Drass Decl. (Doc. # 47-2)).  Kemmerer's report appropriately rebuts the testimony of Feezel and Drass.  Kemmerer's report was timely submitted and appropriately designated as rebuttal.

## CONCLUSION

For all of the foregoing reasons, Snap-on's Motion must be denied.  Snap-on made no attempt to resolve this discovery dispute short of this Court's intervention.  Moreover, Kemmerer's report was produced in a timely manner to rebut the testimony of Feezel and Drass.  Snap-on's Motion should be denied.

Respectfully submitted,

*/s/ ALAN B. PARKER*
_____
ALAN B. PARKER (0040008)
ROY A. HULME (0001090)
**Reminger Co., L.P.A.**
1400 Midland Building
101 Prospect Avenue, West
Cleveland, Ohio  44115
(216) 687-1311
(Fax) (216)687-1841
E-Mail:          aparker@reminger.com
                      rhulme@reminger.com

*/s/ MATTHEW L. SCHRADER*
_____
MATTHEW L. SCHRADER (0074230)
**Reminger Co., L.P.A**
65 East State Street, 4th Floor
Capitol Square
Columbus, Ohio  43215
(614) 228-1311
(Fax) (614) 232-2410
E-Mail:          mschrader@reminger.com

Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2010, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ MATTHEW L. SCHRADER

_____

MATTHEW L. SCHRADER (0074230)