**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| SNAP-ON BUSINESS SOLUTIONS, INC. ) | |
| ) | CASE NO. 5:09-CV-01547-JG |
| Plaintiff, ) | |
| ) | JUDGE JAMES S. GWIN |
| v. ) | |
| ) | **PLAINTIFF'S REPLY IN SUPPORT OF** |
| O'NEIL & ASSOCIATES, INC. ) | **ITS MOTION TO STRIKE THE** |
| ) | **REPORT OF RICHARD KEMMERER** |
| Defendant. ) | **AND MOTION *IN LIMINE* TO** |
| ) | **PRECLUDE HIM FROM TESTIFYING** |
| ) | **AT TRIAL** |

As predicted, in its *Memorandum in Opposition to Plaintiff's Motion to Strike* [Doc. 72] (the "Opposition"), O'Neil & Associates, Inc. attempts to justify its untimely filing of Richard Kemmerer's report by characterizing him as a "rebuttal" expert. Apparently recognizing its mistake in not disclosing Kemmerer's report within 90 days of trial, O'Neil now argues that Kemmerer's report "responds to" certain Declarations attached to Snap-on's opposition to O'Neil's summary judgment motion. However, nothing in O'Neil's Opposition changes the fact that Kemmerer cannot be considered a rebuttal expert because there is simply nothing for him to rebut. Therefore, his report was untimely disclosed and he should not be permitted to testify at trial.

**I.      THIS IS NOT A "DISCOVERY DISPUTE."**

The lack of merit in O'Neil's position that Kemmerer is a rebuttal expert notwithstanding, O'Neil first attempts to defeat Snap-on's Motion by claiming that the issue as to whether Kemmerer's report was timely disclosed is a "discovery dispute" governed by Fed. R. Civ. P. 37. [*See generally* Doc. 72 at p. 1-2.] O'Neil claims that Snap-on's counsel was required to meet and confer with O'Neil's counsel prior to filing the Motion. This position defies logic.

Snap-on's citation to the Court's ability to sanction O'Neil under Rule 37 is not controlled or affected by Rule 37(a)(1) and the requirement for "a certification that the movant has in good faith conferred." The Court's ability to sanction O'Neil for failing to timely disclose its expert report is found in Rule 37(c) – **"Failure to Disclose; to Supplement an Earlier Response, or to Admit."** After O'Neil failed to comply with the Court's October 1, 2009 scheduling Order [Doc. 28], Snap-on moved the Court to sanction O'Neil and prevent it from using Kemmerer's report or calling him to testify at trial. This was not a failure to disclose discoverable information under Rule 26 for which the parties would need to meet and confer; this was the failure of O'Neil **to follow the Court's Order.** *See Sexton v. Uniroyal Chem. Co., Inc.*, 62 Fed. Appx. 615, 616 fn. 1 (6th Cir. Apr. 8, 2003) (recognizing that a district court may exercise sanctions for failure to report expert witness testimony under Rule 37, and citing to additional Sixth Circuit cases holding the same). Therefore, this is not a discovery dispute, and the Court can decide the merits of the untimely disclosure without a "certification" from Snap-on.

## II. KEMMERER IS NOT A REBUTTAL EXPERT.

O'Neil attempts to characterize Kemmerer as a rebuttal expert by stating that his report is in response to the Declarations of Greg Feezel and Jewel Drass[1] attached to Snap-on's opposition to O'Neil's motion for summary judgment. [Doc. 47.] O'Neil claims that, because Feezel was identified as a technical expert by Snap-on, Feezel was required to produce a "report," which he allegedly did via his Declaration. According to O'Neil, because Snap-on "produced" this "expert report" of Feezel by attaching it to Snap-on's opposition to O'Neil's summary judgment motion, Kemmerer's report was "an appropriate rebuttal report" to Feezel's Declaration, and thus

---

[1] Snap-on has not identified Jewel Drass as an expert, so it is unclear how Kemmerer's report in any way was created to "rebut" Ms. Drass' Declaration.

timely disclosed. [Doc. 72 at p. 2.] However, O'Neil's analysis is flawed for the following reasons.

### A. Greg Feezel Was Not Required To Prepare And Submit An Expert Report.

O'Neil's entire argument for why Kemmerer's report should be treated as rebuttal, and thus timely disclosed, rests on a faulty premise: that Feezel was required to create and produce an expert report. Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure states that:

> "[u]nless otherwise stipulated or ordered by the court, [the] disclosure [of an expert witness] must be accompanied by a written report…**if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony.**

Fed. R. Civ. P. 26(a)(2)(B) (emphasis added). The test for whether a report is required under Rule 26 is whether the witness is either specially retained or an employee who regularly gives expert testimony. As O'Neil is well-aware, Greg Feezel does not fit into either of those categories and, thus, he is not required to produce an expert report.

Under O'Neil's logic, it should have produced expert reports for both Armando Monzon and David Stackhouse, two of its employees whom it identified as expert witnesses. However, O'Neil did not produce reports for these witnesses, nor were they required to, as Monzon and Stackhouse are simply employees who do not regularly give expert testimony.[2] Similarly, Feezel was not required to produce an expert report, and the entire premise for O'Neil's argument that Kemmerer's report is "rebuttal" is simply not true. *See North Am. Rescue Prods. v. Bound Tree Med., LLC*, Case No. 2:08-cv-101, 2009 U.S. Dist. LEXIS 118316, at *13-14 (S.D. Ohio Nov. 19, 2009) (expert report of defendant's employee not required where plaintiff had deposed defendant's employee-witness and "provided no evidence based on this testimony to dispute

---

[2] To be clear, Snap-on still objects to Monzon and Stackhouse testifying as expert witnesses because they fail to meet the standards articulated in Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579. [*See* Doc. 58, Snap-on's Motion *In Limine*.]

[defendant's] position" that the witness is an employee who does not regularly testify as an expert).

In arguing that Feezel was required to submit an expert report, O'Neil relies on *Bekaert Corp. v. City of Dyersburg*, 256 F.R.D. 573 (W.D. Tenn. 2009). [*See* Doc. 72 at p. 4.] The *Bekaert* decision is readily distinguishable because, unlike here, the expert witness in that case was not an employee of the party which identified him as an expert. *See Bekaert Corp.*, 256 F.R.D. at 574. Specifically because that expert was not an employee of the party, the court conducted an analysis into whether he "was retained or specifically employed to render an expert opinion such that an expert report was required." *Id*. The second provision of Rule 26(a)(2)(B) – "…or one whose duties as the party's employee regularly involve giving expert testimony" – was not implicated in the court's analysis, as it was irrelevant.[3] Therefore, O'Neil's analysis of the *Bekaert* decision is misplaced; the question as to whether a witness is "specially employed" by the party that identifies him is only relevant if the witness is not **permanently** employed by that same party.

Unlike the witness in *Bekaert*, Feezel has personal, first-hand knowledge of the facts at issue regardless of the litigation. Feezel was not plucked from the bowels of Snap-on to review a cold record and analyze the effect that O'Neil's data scraping tool had on Snap-on's systems after the damage had been done. Feezel, as Snap-on's Director of Security and IT Risk Management has personal, first-hand knowledge of: the websites hosted by Snap-on for MCFA (Feezel Decl. at ¶ 2); the security measures taken by Snap-on to block O'Neil's data scraping tool (*Id* at ¶ 3); the effect that the data scraping tool had on the Snap-on servers (*Id* at ¶¶ 4-10);

---

[3] The *Bekaert* court did discuss a circuit and district court split as to whether expert reports are required for party employees "who have no connection to the underlying events, but who are instead called solely to offer expert testimony." *Bekaert*, 256 F.R.D. at 576. This split in authority was irrelevant to the *Bekaert* court's holding because the expert in that case was not a party employee, and it should be irrelevant to this Court for the same reason.

the investigation performed which led Snap-on to discover that O'Neil was the source of the website crashes (*Id* at ¶¶ 11-21); and the fact that Snap-on spent approximately 200 working hours diagnosing and repairing the damage caused by the scraping tool. (*Id* at ¶ 22.) Unlike the witness in *Bekaert*, Feezel has been involved in this dispute long before Snap-on's Complaint was ever filed. As such, he was not required to create and produce an expert report.

### B. Greg Feezel's Declaration Is Not An "Expert Report."

Regardless of whether Feezel was required to produce an expert report – which he was not – his Declaration attached to Snap-on's opposition to O'Neil's summary judgment motion cannot be construed as a "report." The Declaration was created to address certain facts relevant to demonstrating that a genuine issue of material fact existed for trial and that O'Neil should not be granted summary judgment. [*See* Doc. 47-3.] The Declaration was not a comprehensive "report" created by Feezel which addressed the ultimate position to be taken by Snap-on at trial. Most tellingly, the Declaration did not contain the necessary items under Rule 26(a)(2)(B)(i)-(vi) which are required for expert reports, and therefore the Declaration cannot possibly be construed as an "expert report."[4] *See* Fed. R. Civ. P. 26(a)(2)(B)(i)-(vi); *see also Lunn v. Fragomen, Del Rey, Bernsen and Loewy P.C.*, Case No. H-04-404, 2006 U.S. Dist. LEXIS 11160, at *13-14 (S.D. Tex. Feb. 28, 2006) (expert's letter to plaintiff's counsel did not constitute an "expert report" under Rule 26 because, *inter alia*, it failed to contain the requirements under Rule 26(a)(2)(B)). Because Feezel's Declaration is not an expert report, O'Neil cannot negate their untimely filing by arguing that Kemmerer's report was created in rebuttal.

---

[4] Interestingly enough, in the *Bekaert* decision, the court held that the expert witness' declaration **did not** constitute an expert "report" because it did not comply with the requirements of Rule 26 and was not "prepared by" the witness himself, but prepared by counsel. *See Bekaert*, 256 F.R.D. at 579.

### C. Even If Greg Feezel's Declaration Is Considered An "Expert Report," Kemmerer's Report Does Not "Rebut" It.

O'Neil fails to demonstrate how Kemmerer's report is in any way a "rebuttal" to the Declaration. Rule 26(a)(2)(C) describes rebuttal experts as those offered "**solely** to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B)." Fed. R. Civ. P. 26(a)(2)(C) (emphasis added). Kemmerer's report simply offers his opinion as to the data scraping tool at issue in this case and makes no mention of the Feezel Declaration or the statements contained therein. The opening sentence of the report states that its purpose is to "summarize[] our effort to analyze the MCF Data Acquisition software," not to distinguish analysis performed by Snap-on or its experts. The report does not at all contradict or rebut Snap-on's evidence, let alone "solely" contradict. The fact that it is second-in-time to Feezel's Declaration does not mean that it is "rebutting" the Declaration.

Furthermore, if Kemmerer's report was written as a direct "rebuttal" to Feezel's Declaration, Snap-on is not sure why O'Neil did not include Kemmerer's report in its *Reply in Support of Motion for Summary Judgment*. [Doc. 57.] Despite purportedly being written as a direct response to the Feezel Declaration, which was itself attached to Snap-on's *Memorandum in Opposition to O'Neil's Motion for Summary Judgment* [Doc. 47], O'Neil does not include any reference to Kemmerer's report in its Reply, the brief which is written to directly respond to Snap-on's memorandum in opposition. O'Neil's failure to include Kemmerer's report in its Reply speaks volumes to the fact that even O'Neil did not consider it to be "rebuttal" until Snap-on filed its *Motion to Strike*.

Additionally, although both the Feezel Declaration and Kemmerer's report discuss the data scraping tool *generally*, they address totally separate issues related to O'Neil's scraping. Feezel's Declaration discusses the effect that O'Neil's actions had on Snap-on's computers,

servers and websites. [*See* Doc. 47-3.] The Declaration does not contain any discussion (let alone an in-depth, expert-level discussion) about exactly how the data scraping tool actually worked. Feezel's focus in the Declaration was on the source of the scraping (O'Neil's IP address), how it accessed the Snap-on servers, and the effect it had on Snap-on. Kemmerer's report on the other hand discusses the exact opposite: it only analyzes the data scraping tool itself and exactly how it worked. Therefore, not only does Kemmerer's report not respond to Feezel's Declaration, it does not even cover the same subject matter.

The absurdity of O'Neil's argument that Kemmerer's report "responds to" the Feezel Declaration is confirmed by the timing of the relevant filings. O'Neil identified Kemmerer as an expert on November 16, 2009, O'Neil did not file its motion for summary judgment until February 1, 2010 [Doc. 41], and Snap-on did not file its opposition to O'Neil's summary judgment motion until February 15, 2010, attached to which was the Feezel Declaration. [Doc. 47.] It is not possible that Kemmerer's sole function in being identified as an expert was to respond to a Declaration which had not yet been written (and which might never have been written had Snap-on chosen not to include it in its opposition), in response to a motion for summary judgment which would not be drafted and filed until three months later. Thus, Kemmerer's report does not "rebut" Feezel's Declaration, even if the latter is considered an expert report.

## CONCLUSION

O'Neil failed to produce the report of Richard Kemmerer within the time frame established by this Court's Order and Rule 26 of the Federal Rules of Civil Procedure. As such, Snap-on respectfully requests that Kemmerer's report be stricken and that he be barred from testifying at trial.

Respectfully submitted,

HAHN LOESER & PARKS LLP

By: /s/ Phillip G. Eckenrode
Phillip G. Eckenrode (Ohio Reg. No. 84,187)
65 East State Street, Suite 1400
Columbus, Ohio 43215
614-233-5147 (phone)
614-233-5194 (fax)
peckenrode@hahnlaw.com (e-mail)

and

R. Eric Gaum (Ohio Reg. No. 66,573)
Amanda H. Wilcox (Ohio Reg. No. 73,832)
200 Public Square, Suite 2800
Cleveland, Ohio 44114
216-621-0150 (phone)
330-864-7986 (fax)
regaum@hahnlaw.com (e-mail)
awilcox@hahnlaw.com (e-mail)

*Counsel for Plaintiff Snap-on Business Solutions, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 12th day of April, 2010, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following counsel by operation of the Court's electronic filing system:

Alan B. Parker
REMINGER CO., L.P.A.
1400 Midland Building
101 Prospect Avenue, West
Cleveland, Ohio 44115
aparker@reminger.com

Matthew L. Schrader
REMINGER CO., L.P.A.
65 East State Street, 4th Floor
Capitol Square
Columbus, Ohio 43215
mschrader@reminger.com

*Counsel for Defendant*
*O'Neil & Associates, Inc.*

              /s/ Phillip G. Eckenrode
              One of the Attorneys for Plaintiff
              Snap-on Business Solutions, Inc.