UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SNAP-ON BUSINESS SOLUTIONS, INC., ) | CASE NO. 5:09-CV-1547 |
| ) | |
| ) | **JUDGE JAMES S. GWIN** |
| Plaintiff ) | |
| ) | |
| vs. ) | **DEFENDANT'S MOTION *IN LIMINE* TO** |
| ) | **EXCLUDE PARTIAL OPINION** |
| O'NEIL & ASSOCIATES, INC., ) | **TESTIMONY OF PLAINTIFF'S EXPERT** |
| ) | **JEFFERY J. MORDAUNT** |
| Defendant ) | |

Defendant O'Neil & Associates, Inc. by and through undersigned counsel, hereby move the Court for an Order in Limine to exclude a portion of the opinion of Plaintiff's expert, Jeffery J. Mordaunt at trial. Mr. Mordaunt's report, analysis, and ultimate calculation of the defendant's gross revenue include amounts that, as a matter of law, are not "attributable to the infringement" as referenced in 17 U.S.C. 504(b). As a result, Mr. Mordaunt's report and testimony as to O'Neil's gross revenues are improper, will mislead and confuse the jury, will result in unfair prejudice to O'Neil & Associates, Inc., and should be excluded.

The alleged infringing conduct in the instant matter is reflected and limited to a single performance and payment Milestone associated with the entire Mitsubishi project. That Milestone #1 is referenced "Data Services – Source data analysis and baseline identification – consists of receipt of all key source data/information, data collection, organization and initial inventory." Data Services is similarly defined and described in the Statement of Work that controls the services O'Neil performs. The alleged infringing conduct at issue is wholly encompassed within Milestone #1, and this Milestone gross revenues of $200,000, not a sum in excess of $1.4 million, which the plaintiff seeks to present to the jury.

17 U.S.C. § 504(b) entitled "Actual Damages and Profits", reads:

> The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that ***are attributable to the infringement*** and are not taken into account in computing the actual damages.  In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the element of profit attributable to factors other than the copyrighted work. [emphasis added]

Under 17 U.S.C. § 504(b), the statute specifically focuses on any profits of an infringer that are attributable to the infringement, which are not taken into account in computing actual damages.  The Second Circuit in *Davis v. Gap, Inc*., 246 F.3d 152, 160 (2nd Cir. 2001) provides a telling analogy.

> If a publisher published an anthology of poetry which contained a poem covered by the plaintiff's copyright, we do not think the plaintiff's statutory burden would be discharged by submitting the publisher's gross revenue resulting from its publication of hundreds of titles, including trade books, textbooks, cookbooks, etc.  In our view, the owner's burden would require evidence of the revenues realized from the sale of the anthology containing the infringing poem.  The publisher would then bear the burden of proving its costs attributable to the anthology and the extent to which its profits from the sale of the anthology were attributable to factors other than the infringing poem, including particularly the other poems contained in the volume.  The point would be clearer still if the defendant publisher were part of a conglomerate corporation that also received income from agriculture, canning, shipping, and real estate development. While the burden-shifting statute undoubtedly intended to ease plaintiff's burden in proving the defendant's profits, we do not believe it would shift the burden so far as to permit a plaintiff in such a case to satisfy his burden by showing gross revenues from agriculture, canning, shipping and real estate where the infringement consisted of the unauthorized publication of a poem.

While the facts of the instant matter are less extreme, the point remains the same.  The statutory term "infringer's gross revenue" should not be construed so broadly as to include revenue from lines of business that were unrelated to the act of infringement.  *Id.*

In *Taylor v. Meirick*, 712 F.2d 1112 (7th Cir. 1983) the defendant was a map-maker, who copied and sold three of the plaintiff's copyrighted maps.  During the relevant time period the defendant sold 150 maps, as well as other merchandise.  Plaintiff submitted evidence of gross

revenues and profits deriving from the defendant's overall sales. The court rejected plaintiff's claim, reasoning:

> all the burden shifting language of § 504(b) means is that the plaintiff could have made out a prima facie case for an award of infringer's profits by showing the defendant's gross revenues *from the sale of the infringing maps*. It was not enough to show the defendant's gross revenues from the sale of everything he sold … *Id.* (Emphasis added.)

Applying this reasoning to our case, it is clear that Mr. Mordaunt's report attempts to correlate all of O'Neil's revenue streams in relation with MCF as "gross revenues." The report, and therefore the expected testimony, of the plaintiff's expert takes into consideration all the work that would be performed irrespective of copyright infringement or data scraping. Yet, the only conduct of O'Neil that is alleged to have been an infringement on the plaintiff's copyright was O'Neil's "data scraping." This conduct was completed by O'Neil during Milestone #1 – the first phase of the project. All of the work under the remaining ten Milestones would have been performed by O'Neil regardless of the source of the data that was to be used to complete those Milestones, and regardless of any infringement. Simply put, the remaining Milestones would have been completed by O'Neil whether it used the data that was obtained from Mitsubishi's websites or data that was provided to it directly from Mitsubishi. O'Neil's revenues for the remaining Milestones are, therefore, not attributable to the infringing conduct.

The witness's broad approach that encompasses all revenues – as opposed to all revenues attributable to the infringement – is not only improper, but will mislead and confuse the jury as the analysis and computations within do not comport with the meaning of "gross revenue" under 17 U.S.C. § 504(b).

## CONCLUSION

For all of the foregoing reasons, Mr. Mordaunt's expert report which improperly includes Milestones 2-11 and Hosting in the calculation of "gross revenues" should be excluded.

Respectfully submitted,

*/s/ ALAN B. PARKER*

3

                                              _____
ALAN B. PARKER (0040008)
ROY A. HULME (0001090)
**Reminger Co., L.P.A.**
1400 Midland Building
101 Prospect Avenue, West
Cleveland, Ohio  44115
(216) 687-1311
(Fax) (216)687-1841
E-Mail:	aparker@reminger.com
	rhulme@reminger.com

*/s/ MATTHEW L. SCHRADER*

_____
MATTHEW L. SCHRADER (0074230)
**Reminger Co., L.P.A**
65 East State Street, 4th Floor
Capitol Square
Columbus, Ohio  43215
(614) 228-1311
(Fax) (614) 232-2410
E-Mail:	mschrader@reminger.com

Attorneys for Defendant

## CERTIFICATE OF SERVICE

     I hereby certify that a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

                                              */s/ ALAN B. PARKER*

                                              _____
ALAN B. PARKER (0040008)