UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SNAP-ON BUSINESS SOLUTIONS, INC., | ) ) ) | CASE NO. 5:09-CV-1547 |
| | ) | **JUDGE JAMES S. GWIN** |
| Plaintiff | ) ) | |
| vs. | ) ) | **DEFENDANT'S MOTION FOR NEW TRIAL and JMOL** |
| O'NEIL & ASSOCIATES, INC., | ) ) | |
| Defendant | ) | |

Now into Court, through undersigned counsel, comes defendant, O'Neil & Associates, Inc., who moves for post-judgment relief, specifically requesting a remittitur or a new trial pursuant to Federal Rule of Civil Procedure, Rule 59, and renewing its Motions for Judgment as a Matter of Law after trial, pursuant to Federal Rule of Civil Procedure, Rule 50(b).  For the reasons set forth in the accompanying Memorandum in Support, as well as those set forth in the Defendant's Motion for Summary Judgment (Doc. #41) and its supporting Memoranda, (Docs. #41-1 and 57), and the Defendant's Brief on Copyright Protection to Databases (Doc. #107), all incorporated herein by reference as if included *in extenso*, the defense requests that the Court enter judgment as a matter of law in defendant's favor, or in the alternative, order a new trial.

Respectfully submitted,

*/s/ ALAN B. PARKER*
_____
ALAN B. PARKER (0040008)
ROY A. HULME (0001090)
**Reminger Co., L.P.A.**
1400 Midland Building
101 Prospect Avenue, West
Cleveland, Ohio  44115
(216) 687-1311

(Fax) (216)687-1841
E-Mail: aparker@reminger.com
rhulme@reminger.com

*/s/ MATTHEW L. SCHRADER*

_____
MATTHEW L. SCHRADER (0074230)
**Reminger Co., L.P.A**
65 East State Street, 4th Floor
Capitol Square
Columbus, Ohio  43215
(614) 228-1311
(Fax) (614) 232-2410
E-Mail: mschrader@reminger.com

Attorneys for Defendant

**MEMORANDUM IN SUPPORT**

May it Please the Court:

Defendant, O'Neil and Associates ("O'Neil"), seeks a new trial or the post verdict judgment as a matter of law, under Federal Rules of Civil Procedure 59 and 50. The jury verdict, which was baffling on first impression, is the result of the failure of the jury to follow the Court's instructions on damages recoverable under the claims presented to the jury. Additionally, O'Neil renews its claims for judgment as a matter of law as to claims for violation of the Computer Fraud and Abuse Act ("CFAA"), breach of contract, and copyright infringement.

**FACTUAL AND PROCEDURAL BACKGROUND**

Trial commenced on May 17, 2010. The matter was submitted to the jury on four claims: violation of the CFAA, trespass to chattels, breach of contract, and copyright infringement. No jury interrogatories or special verdict forms were submitted to the jury. The jury returned a general verdict for the plaintiff in the sum of $658,000 on May 19, 2010. The judgment entry was filed on May 21, 2010 (Doc. #115)

This case arises from O'Neil's retrieval of parts information authored and owned by various Mitsubishi Caterpillar Forklift entities ("Mitsubishi"). Mitsubishi paid Snap-On to develop and maintain an electronic parts catalog for Mitsubishi itself, and for Mitsubishi's customers and its dealers. Snap-On obtained the contents for the electronic parts catalog from a number of sources in the Mitsubishi related companies. The content consisted of parts illustrations, names, numbers, and products associated with the parts illustrations. Some of the content was provided in electronic form, but much of the content was printed material, or PDF documents, which needed to be converted into a more suitable form for effective electronic interactive use.

As Mitsubishi's satisfaction with Snap-On decreased, Mitsubishi sought alternative electronic parts catalog providers, including O'Neil. When Snap-On refused to release the electronic

3

representations of the parts information provided by Misubishi, Mitsubishi authorized O'Neil to develop a software tool to retrieve parts information from the Mitsubishi web sites hosted by Snap On. Mitsubishi also authorized O'Neil to access the Mitsubishi web sites, and ultimately to run the software tool to collect the parts information.

At trial the testimony clarified the difference between Snap On's web servers, which host the Mitsubishi websites, and database servers, where the relational database is organized and stored. The database itself – its selection, arrangement, and organization, not the parts information it contains – is all that Snap On claims under copyright. The database resides only on Snap On database servers.

There is no evidence whatever to suggest that the database or database server was accessed or reproduced by O'Neil. The only plaintiff witness to review the information obtained by O'Neil acknowledged that the NetCompass software was not copied.[1] The defendant's technical expert searched the entire body of data obtained by O'Neil to determine whether any of the information in the plaintiff's copyright registration appeared in the allegedly infringing material.[2] It did not. That testimony was undisputed.

*Damages*

The plaintiff presented evidence of two kinds of damage. Under the CFAA and the trespass to chattels claim, the plaintiff sought recovery for the value of the time and effort of its employees to assess and address the problems caused by the defendant's access to the Mitsubishi web sites. The evidence reflected 200 hours of employee time on such activities. Plaintiff valued that time at $150/hour, based on a labor charge included in a Mitsubishi/Snap On contract document (Exh. D).

---

[1] Jewel Drass trial testimony at trial.
[2] Richard Kemmerer testimony at trial.

4

Accordingly, plaintiff requested $30,000 in damages under the CFAA and/or the trespass to chattels claims.

Under the breach of contract and/or copyright theories, the plaintiff sought $836,211 – the calculation by the plaintiff's damages expert of the plaintiff's lost profits.

*The Verdict*

The jury returned a verdict of $658,000.  The sum is unsupportable by the evidence if the law is appropriately applied.  Although the verdict can be easily derived from numbers in a Mitsubishi/Snap On contract in evidence, the use of those numbers defies the court's jury instructions on damages.

An O'Neil employee testified that O'Neil had used 1.2 million elements of data and 76,000 images that had been obtained from the Mitsubishi web sites.[3]  The Mitsubishi/Snap On contract document that plaintiff referenced to support a labor rate of $150/hour contained tables of various rates for services not otherwise covered under the annual base contract payment of $513,000.[4] Those rates included $0.50 for electronic conversions, and an alternative labor rate of $100/hour.

| Task | Standard Fee |
|---|---|
| CUSTOMER DATA CONVERSION FEES | |
| Service/Operators Manual Page Conversion from Paper to "non-searchable text within the document" format (300 dpi) | $0.50 per page scanned, plus hourly fees at rates for development then in effect to build PDF navigation |
| Parts Diagram Conversion from Paper | $0.50 per page |
| Bulletin Conversion from Paper | $0.50 per page |
| Project Coordinator | $100.00 per hour |
| Technical Writer | $100.00 per hour |
| Quality Specialist | $100.00 per hour |

Applying these rates to the testimony at trial results in the verdict rendered by the jury.

---

[3] Heather Cobb testimony at trial.  This is the only testimony or evidence on the issue of how much information was used by O'Neil.

> 1.2 million + 76,000 = 1,276,000 elements and images
> 1,276,000 x $0.50 = $638,000
> 200 hours of labor x $100/hour = $20,000
> Total verdict awarded = $658,000

The use of the numbers is ingenious but improper. This was not an O'Neil contract. The contract is a Mitsubishi/Snap On contract. O'Neil was not even permitted to know of the contract's content until the Snap On waived confidentiality of the contract by introducing it at trial.[5] Any calculation by the jury based on the copying charges would reflect the *revenues*, not the profits, associated with that work. Thus, the amount is improper as a measure of copyright damages or contract damages. And, the sum is grossly excessive if it represents a damage award under the CFAA, trespass to chattels, or breach of contract claims.

**I. A NEW TRIAL SHOULD BE GRANTED, OR IN THE ALTERNATIVE, A REMITTITUR SHOULD BE ENTERED.**

**A. This Court Should Grant Defendant O'Neil a New Trial Because the Damage Award Was Excessive and Improperly Calculated.**

Federal Civil Rule 59(a) provides that "a court may grant a new trial on some or all of the issues after a jury trial for any reason which a new trial has heretofore been granted in an action at law in a federal court." Fed. R. Civ. P. 59(a). The Sixth Circuit has interpreted Rule 59(a) to mean that a new trial is warranted when a jury reaches a seriously erroneous result. *Jackson v. A-C Prod. Liab.Trust*, 622 F. Supp. 2d 641, 643 (N.D. Ohio 2009). A verdict is seriously erroneous when (1) it is against the weight of the evidence; (2) the damages are excessive; or (3) the trial was unfair to the moving party in some fashion. *Id.* In our case, the jury reached a seriously erroneous result.

The $ 658,000 awarded as damages to Snap-on is excessive and against the manifest weight of the evidence. The evidence showed $30,000 in repair costs. If the jury awarded lost profits, there were two figures in evidence on which to base a lost profits award – approximately $836,000

---

[4] The contracts are trial exhibits A, B, C, and D. This passage is from page 5 of Exh. D. Although these contracts were in evidence, they do not include the EULA which is the basis of the plaintiff's breach of contract claim.
[5] Robert Heilman trial testimony.

6

representing three years of lost profits, and $150,000 representing six months of lost profits.[6] At the time of trial, of course, there was no such loss at all; the Mitsubishi/Snap On contract was still in force. Moreover, the undisputed testimony at trial is that Snap On had offered to provide the entire database to Mitsubishi for $450,000. While that sale price was not claimed as an item of damage at trial, it serves to emphasize the excessiveness of the jury award. $638,000 far exceeds the damages that Snap-on should have been awarded. Because these damages were so excessive and against the weight of the evidence, Defendant O'Neil is entitled to remittitur or in the alternative a new trial. *See Viront v. Wheeling & Lake Erie Ry. Co.* 91 F. Supp. 854 (N.D. Ohio 1950)(granting a new trial on the basis of an excessive damage award).

Furthermore, it appears that the jury improperly calculated the damages award. In evaluating the figure, the jury award could only be based on its computation of the fee rates for data conversion and for professional services provided in the Mitsubishi/Snap-on contract. This calculation of damages is inappropriate considering that O'Neil was not a party to the agreement. There is no evidence as to whether or how the provision would have applied even between the parties to the contract. Certainly there was no evidence that the service rates applied to O'Neil in any respect. Moreover, the methodology represents a calculation based on an inapplicable contract rate, instead of a determination of lost profits. *See Busam Motor Sales, Inc. v. Ford Motor Co.,* 85 F. Supp. 790 (S.D. Ohio 1949)(granting a new trial because there was no basis upon which the jury could arrive at its loss of profits). Such an unwarranted and improper miscalculation of a damage award should not be allowed to stand. Therefore, the Court should grant remittitur or in the alternative a new trial.

    **B.**    **The Court Should Grant Remittitur Because the Jury Award Exceeds the Amount the Jury Could Have Found to be Compensatory.**

---

[6] Six months is the maximum term of the Mitsubishi/Snap On contract. Either party may non-renew with 30 days notice prior to the end of the six month renewal term. Both calculations were testified to by Jeffrey Mordaunt, the only witness to introduce damage testimony.

A motion for remittitur should be granted if the award exceeds the amount that was the maximum the jury reasonably could find to be compensatory for the plaintiff's loss. *Caldwell v. Ohio Power Co.* 710 F. Supp. 194 (N.D. Ohio 1989). The $658,000 award is beyond what would be compensatory to Snap-on in light of the figures provided at trial as to lost profits and repairs. Therefore, it is excessive and should be reduced. *See Plough v. REI, Inc.,* Nos. 92-6031/6032/6033, 1993 U.S. App. LEXIS 29809 at *11 (6th Cir. Nov. 12, 1993)(granting a motion for remittitur or in the alternative new trial because the damage award improperly represented a loss of gross profits which was not recoverable). Here, the Mitsubishi/Snap On contract rate for copying is not recoverable, yet it appears that is what the jury based its award on. Therefore, the damage award must be reduced to an amount which does not exceed an amount that is compensatory to Snap-on, and supported by the evidence. It is submitted that the maximum non-speculative sum supported by the evidence is $30,000 for repair costs and $150,000 for six months of lost profits, for a total of $180,000.[7]

## II. JUDGMENT AS A MATTER OF LAW SHOULD BE ENTERED FOR THE DEFENDANT O'NEIL.

O'Neil has previously filed a motion for summary judgment seeking to dismiss the claims that went to the jury. The genuine issues of disputed fact that appeared to be present before trial were clarified by the testimony and evidence presented at trial. There is now no dispute at all that O'Neil was authorized by Mitsubishi to access Mitsubishi's web sites. There is no longer any claim by Snap On to copyright in the information, content, illustrations, or data supplied by Mitsubishi. After trial it is clear that Snap On asserts the claim of copyright only as to the selection, arrangement, or organization of the relational database. And, it is clear after trial that the database

---

[7] Any lost profit award is somewhat speculative, since the Mitsubishi/Snap On contract was still being performed, and either party has the right to terminate the contract for any reason every six months. Conceding only for the purposes of this motion that lost profits are recoverable at all, any sum in excess of the six month period referenced in the contract itself would disregard the very rights to terminate that the contract purports to establish.

8

was never reproduced, the database server was never accessed, and the selection, arrangement, and organization of Snap On's relational database was never infringed.

After the evidence and testimony was complete, the liability issues in this case devolved into questions of law on which this court should now rule in O'Neil's favor.  The CFAA issues revolve entirely around whether the access to Mitsubishi's web sites was authorized.  Factually the matter is clear; access was authorized by Mitsubishi.  The question of whether such authorization was sufficient under the CFAA, or was permitted under the contracts between Mitsubishi and Snap On are questions of law on which the Court is empowered to, and should, rule in O'Neil's favor.

Similarly, the issues under the trespass to chattels claim and the breach of contract claim have crystallized into legal issues on which the Court can and should rule in O'Neil's favor. Authorized access by the entity with a possessory interest is not trespass, as a matter of law.  As an issue of law, it is for the Court to determine.  If Mitsubishi should not have authorized O'Neil to access its web sites, then Snap On's remedy is with Mitsubishi.

The breach of contract claim, under the End User License Agreement ("EULA"), poses the legal issue of whether the EULA restricted access to the web site, or whether it governed the downloading and installation of the NetCompass software product.  That is not an issue of fact, but one of contract interpretation for the Court to make.

Finally, the copyright infringement claim depends on whether the copied information was copyrightable, as recognized and explained by the Court in its ruling on the motion for summary judgment (Doc. #77).  Copyrightability is a matter of law, and now that the testimony is clear and it has been established that the relational database was never accessed or copied by O'Neil, the Court should issue judgment as a matter of law in O'Neil's favor on the copyright infringement claim.

The legal authority and grounds for these motions have been set out in the defendant's Motion for Summary Judgment (Doc. 41) and its supporting memoranda (Docs. 41-1 and 57), and

9

the defendant's Brief on Copyright Protection to Databases (Doc.107), all incorporated herein by reference as if included *in extensio*, the defense requests that the Court enter judgment as a matter on law in defendant's favor, or in the alternative order a new trial.

**CONCLUSION**

For the reasons stated above, the defendant respectfully requests that the Court grant judgment as a matter of law in defendant's favor, or in the alternative order a new trial on those issues on which judgment as a matter of law is not granted.

Respectfully submitted,

/s/ ALAN B. PARKER
_____
ALAN B. PARKER (0040008)
ROY A. HULME (0001090)
**Reminger Co., L.P.A.**

/s/ MATTHEW L. SCHRADER
_____
MATTHEW L. SCHRADER (0074230)
**Reminger Co., L.P.A**

## **CERTIFICATE OF SERVICE**

The foregoing document was electronically filed with the Court and will be accessible to all parties through the Court's electronic filing system.

                                                  */s/ ALAN B. PARKER*

                                                  ALAN B. PARKER (0040008)
                                                  ROY A. HULME (0001090)
                                                  **Reminger Co., L.P.A.**