UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------

```
                                              :
SNAP-ON BUSINESS SOLUTIONS                    :
INC.,                                         :
                                              :   CASE NO. 5:09-CV-1547
          Plaintiff,                          :
                                              :
     v.                                       :   OPINION & ORDER
                                              :   [Resolving Doc. Nos. 116 & 117.]
O'NEIL & ASSOCIATES, INC.,                    :
                                              :
          Defendant.                          :
                                              :
```
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Following the jury's general verdict in its favor, Plaintiff Snap-on Business Solutions moves for the costs, expenses, and attorney's fees it incurred in litigating the case against Defendant O'Neil & Associates, Inc. [Doc. 117-1.] For the following reasons, the Court **DENIES** Snap-on's motion for expenses and attorney's fees but **AWARDS** Snap-on its requested costs.

According to Snap-on, the source of its right to expenses and attorney's fees is the End User License Agreement—the browsewrap agreement[1] that O'Neil could view (by following a hyperlink) each time it accessed Snap-on's database. That license agreement provided that: "You agree that you will pay or reimburse Snap-on for all reasonable costs and expenses, including reasonable legal fees, incurred to protect or enforce its rights under this Agreement." [Doc. 117-1.]

Even if the jury's general verdict for Snap-on implies that O'Neil breached the license agreement, *see Keet v. Serv. Mach. Co., Inc.*, 472 F.2d 138, 140 (6th Cir. 1972), the problem with

---

[1] "'A browsewrap agreement allows the user to view the terms of the agreement, but [unlike a clickwrap agreement] does not require the user to take any affirmative action before the Web site performs its end of the contract.'" [Doc. 77 (citation omitted).]

-1-

Case No. 5:09-CV-1547
Gwin, J.

Snap-on's argument is that under Ohio law, contractual attorney's fee clauses are contrary to public policy because they tend to encourage litigation. *See State v. Taylor*, 10 Ohio 378, 381 (Ohio 1841).

Although Ohio recognizes an exception to this general rule when the clause is in the interest of both parties and was the product of "free and understanding negotiation," *Worth v. Aetna Cas. & Sur. Co.*, 513 N.E.2d 253, 258 (Ohio 1987), the clause in this case does not satisfy the exception. The clause here benefitted only Snap-on because while it provided for Snap-on's attorney's fees incurred in protecting its rights, it did not also provide for *users'* attorney's fees incurred in protecting *their* rights. And the clause was not the product of "free and understanding negotiation," *id.*, because the browsewrap agreement did not require users to manifest their acceptance of—or even to view—the clause to access Snap-on's database.

Thus, because the license agreement's attorney's fee clause is unenforceable as contrary to public policy, the Court **DENIES** Snap-on's motion for costs, expenses, and attorney's fees. [Doc. 117-1.] However, because Federal Rule of Civil Procedure 54(d) and 28 U.S.C. § 1920 allow the prevailing party to recover costs—including deposition, copying, and printing costs—the Court **AWARDS** Snap-on its requested costs (minus daily real-time transcripts) in the amount of $21,450.72. [Doc. 116.]

IT IS SO ORDERED.

Dated: July 2, 2010                             s/    *James S. Gwin*
                                                JAMES S. GWIN
                                                UNITED STATES DISTRICT JUDGE