UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SNAP-ON BUSINESS SOLUTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> O'NEIL & ASSOCIATES, INC., <br><br> Defendant. | CASE NO. 5:09-CV-01547-JG <br><br> JUDGE JAMES S. GWIN <br><br> **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR NEW TRIAL AND JMOL** |

After three days of trial, 13 witnesses, and a host of documentary evidence, the jury returned a verdict in the amount of $658,000 in favor of Plaintiff Snap-on Business Solutions, Inc. ("Snap-on"). Defendant O'Neil & Associates, Inc. ("O'Neil") now seeks to overturn the jury's verdict based on several arguments, all of which are either unsupported in the law or have already been rejected by this Court. As such, O'Neil's *Motion for New Trial and JMOL* (the "Motion") should be denied.

**I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Although the Court is by now more than well-versed in the facts of this case, several bear repeating in support of this brief. Snap-on initially brought claims against O'Neil for two separate violations of the Computer Fraud and Abuse Act ("CFAA"), trespass to chattels, unjust enrichment, breach of contract, copyright infringement, and misappropriation of trade secrets. [Doc. 34.] The Court granted summary judgment in favor of O'Neil on Snap-on's unjust enrichment claim, finding it to be preempted by the Copyright Act. [Doc. 77 at p. 18.] The remaining claims proceeded to trial on May 17, 2010.

Following the close of Snap-on's case-in-chief, O'Neil moved for a directed verdict on all of Snap-on's claims, which this Court denied. Following the close of all evidence, O'Neil

renewed its motion for judgment as a matter of law on all of Snap-on's claims. Over objection, the Court granted the motion as to Snap-on's claim for misappropriation of trade secrets and did not permit Snap-on to argue punitive damages to the jury. Thus, Snap-on's two claims for violations of the CFAA, breach of contract, trespass to chattels, and copyright infringement were presented to the jury for its consideration.

The Court utilized general verdict forms which asked the jury to either return a verdict for Snap-on or a verdict for O'Neil. If the verdict was for Snap-on, the jury was asked to state the amount of the verdict, but was not required to state on which claims they had found for Snap-on and which they had not. After approximately four hours of deliberation, the jury returned a general verdict in favor of Snap-on and awarded damages in the amount of $658,000. [*See* Doc. 114.]

O'Neil now seeks a variety of relief from the Court. First, it asks the Court to award a new trial on the basis that the jury arrived at the figure of $658,000 based on an improper consideration of the evidence. [Doc. 119 at p. 6.] O'Neil does no more than speculate as to how the jury arrived at its damages calculation, and asserts that such guesswork is sufficient to grant a new trial or remittitur. O'Neil further argues (curiously as a secondary argument) that it is actually entitled to judgment as a matter of law on *all* of Snap-on's claims, because this Court can now decide clearly disputed facts which have now apparently "crystallized" into questions of law. [*Id* at p. 9.] For the reasons that follow, O'Neil is not entitled to a new trial, remittitur, or judgment as a matter of law, and its motion should be denied in its entirety.

## II. LAW AND ARGUMENT

### A. O'Neil's Motion For New Trial And/Or Remittitur

Under Fed. R. Civ. P. 59, a district court may only grant a new trial where the jury's verdict is against the weight of the evidence, if the damages award is excessive, or if the trial was influenced by bias or prejudice, or was otherwise unfair to the moving party. *Rush v. Illinois Cent. R.R. Co.*, 399 F.3d 705, 727 (6th Cir. 2005). The jury's verdict should be accepted if it is one which could reasonably have been reached. *Id.* (quoting *Conte v. General Housewares Corp.*, 215 F.3d 628, 637 (6th Cir. 2000)) (internal quotations omitted). As this Court has stated, a Rule 59 motion should be denied "if the verdict is one that a jury could reasonably reach, regardless of whether the Court might have reached a different conclusion were it the trier of fact." *Lincoln Elec. Co. v. MPM Tech., Inc.*, Case No. 1:08-CV-2853, 2009 U.S. Dist. LEXIS 99231, at *3 (N.D. Ohio Oct. 23, 2009) (Gwin, J.) (citations omitted).

Where a Rule 59 motion is based on the alleged excessiveness of a jury's verdict, damages are only considered "excessive" if they are "above the amount which, under the evidence in the case, was the maximum that the jury reasonably could find to be compensatory for the plaintiff's loss." *Jackson v. A-C Prod. Liability Trust*, 622 F.Supp. 2d 641, 647 (N.D. Ohio 2009) (internal quotations, citations omitted). Furthermore, a jury verdict will only be deemed excessive where it "shocks the conscience of the court." *Id.* (internal quotations, citations omitted) (asbestos wrongful death jury verdict of $8,000,000 shocks the conscience where the parties stipulated to medical expenses of only $200,000, and there was no claim for lost wages, support, or other expenses).

Motions for remittitur made under Rule 59(e) "serve a limited purpose and the Court should grant them only (1) to accommodate an intervening change in controlling law; (2) to

account for new evidence not available at trial; (3) to correct a clear error of law; or (4) to prevent a manifest injustice." *Lincoln Elec. Co.*, 2009 U.S. Dist. LEXIS at \*3 (citing *Gencorp, Inc. v. Am. Int'l Underwriters Co.*, 178 F.3d 804, 834 (6th Cir. 1999)). A fundamental principle of remittitur is that **it cannot be done without the plaintiff's consent.** *See Barna v. City of Cleveland*, Case Nos. 96-3971, 96-4178, 97-4130, 1998 U.S. App. LEXIS 31986, at \*15-16 (6th Cir. Dec. 22, 1998); *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 305 (4th Cir. 1998). Without such consent, a new trial is the only appropriate relief. *Id*; *Barna*, 1998 U.S. App. LEXIS at \*15-16. Because O'Neil cannot overcome the necessary burden to overcome the jury's verdict, O'Neil's motion should be denied.

O'Neil's entire basis for arguing that it is entitled to a new trial and/or remittitur is little more than a conspiracy theory as to how the jury arrived at its verdict of $658,000. With absolutely no basis for concluding that the jury reached its verdict based on an impermissible read of the contracts at issue, O'Neil asks this Court to subvert the jury process (and the Seventh Amendment) to strike down a verdict based on nothing more than utter speculation. As this Court has held, where "the jury reached a general verdict and awarded damages as a lump sum[,] [t]he Defendant cannot presume that the jury calculated this figure in a particular method." *Lincoln Elec. Co. v. MPM Technologies, Inc.*, Case No. 1:08-CV-2853, 2009 U.S. Dist. LEXIS 99231, at \*6 (N.D. Ohio Oct. 23, 2009) (Gwin, J.). In *Lincoln Electric*, the defendant argued that, in reaching its verdict, the jury "must have" included improper elements of damage not borne out of the testimony and evidence at trial. *Id*. Because such an argument was mere speculation, the jury's award was not against the manifest weight of the evidence and the defendant's motion for a new trial and remittitur was denied. *Id.* at \*7.

Courts from around the country have reached similar results. *See, e.g., Nanodetex Corp. v. Defiant Technologies*, 349 Fed. Appx. 312, 320 (10th Cir. 2009) ("General verdicts have a traditional sanctity and will not be upset on the basis of speculation as to the manner in which the jurors arrived at it….we will not invalidate a jury verdict on the basis of plaintiff's guesswork as to the manner in which the jurors arrived at that verdict") (internal quotations, citations omitted); *Questar Pipeline Co. v. Grynberg*, 201 F.3d 1277, 1289 (10th Cir. 2000) (where jury's award was within the range of evidence presented, granting judgment as a matter of law or a new trial would improperly "speculate as to the manner by which jurors arrived at the verdict"); *Argue v. David Davis Enters., Inc.*, Case No. 02-9521, 2009 U.S. Dist. LEXIS 32585, at *74 (E.D. Pa. Mar. 20, 2009) (denying plaintiff's motion to amend jury verdict based on speculation as to how damages amount was calculated).

O'Neil's argument is no less grounded in speculation. Although O'Neil referred to the jury when it made the statement "[t]he use of the numbers is ingenious but improper," the same should be said of O'Neil in arriving at its "explanation" for the amount of $658,000. O'Neil claims that the jury's "use of those numbers defies the court's jury instructions on damages," but O'Neil cannot at all support *that the jury actually used those numbers*. If O'Neil is to be believed, the jury arrived at its verdict by utilizing portions of the parties' contracts which Snap-on never suggested served as the basis for its damages, nor were those portions of the contracts ever *mentioned* at trial.

O'Neil further argues that the figure of $658,000 "far exceeds the damages that Snap-on should have been awarded," because "the undisputed testimony at trial" demonstrated that Snap-on had previously offered to provide the database to MCFA for $450,000. [Doc. 119 at p. 7.] Although O'Neil made this argument at trial, particularly through the cross examination of

Jonathan Harvey and Jeff Mordaunt, the jury quite obviously rejected it, and its verdict cannot be second-guessed. *See Nazar v. Barnett*, Case No. 98-6564, 2000 U.S. App. LEXIS 825, at *11 (6th Cir. Jan. 19, 2000) ("The argument is not without merit, but it is an argument, again, which the jury was free to accept or reject..."). Indeed, this Court's own instructions to the jurors at the close of evidence informed them that they could consider the testimony as they saw fit, and accept or reject such testimony in whole or in part. The jury obviously believed Snap-on's witnesses and evidence but discounted the amount asked for by approximately $200,000. Thus, the verdict is not excessive, and O'Neil's motion for a new trial should be denied.

### B. O'Neil's Renewed Motion For Judgment As A Matter Of Law

In addition to failing to satisfy its burden of showing that a new trial and/or remittitur is warranted, O'Neil also fails to satisfy the ***even higher burden*** for judgment as a matter of law. Pursuant to Rule 50, judgment as a matter of law is only appropriate where the nonmoving party has been fully heard on an issue, "and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 722 (6th Cir. 2004) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149 (2000)). O'Neil's motion for judgment as a matter of law must be denied, because sufficient evidence existed for the jury to reach its conclusion and there exists no remaining "questions of law" for which this Court can substitute its answers for the jury's verdict.

#### 1. *Snap-on Presented Sufficient Evidence To The Jury On Its Claims.*

By the close of evidence, the jury had been presented with more than a sufficient evidentiary basis to find for Snap-on on its claims for violations of the CFAA, breach of contract, trespass to chattels, and copyright infringement. In fact, on each of the claims submitted to the jury and described below, the Court held that sufficient evidence had been presented when it denied O'Neil's motions for directed verdict and judgment as a matter of law on those claims.

O'Neil's *renewed* motion for judgment as a matter of law is simply a re-hashing of an argument already considered and discarded by the Court and the Jury. Accordingly, it should be denied.

###### a. Violations of the Computer Fraud and Abuse Act

Snap-on presented the testimony of several witnesses who testified that O'Neil's data scraper tool accessed Snap-on's protected computers in violation of the CFAA and removed data from and/or damaged those protected computers. Numerous O'Neil witnesses admitted the scraper tool accessed Snap-on's computer servers and removed data from them, and several Snap-on witnesses testified to the interrupted service caused by the massive spikes in server traffic from the scraper. The contracts between Snap-on and MCFA entered into evidence unequivocally demonstrate that MCFA did not have the ability to authorize O'Neil to access Snap-on's computers in violation of federal law. The jury was presented with more than sufficient evidence to find for Snap-on on both of its claims for violation of the CFAA, and to award damages which reflect the time-value cost to Snap-on to restore the servers after each crash.

###### b. Breach of Contract

In support of its breach of contract claim, Snap-on introduced into evidence the EULAs for each of the six Mitsubishi websites, which state that only authorized Mitsubishi dealers with proper credentials are permitted to access the site and use the NetCompass software. Several O'Neil witnesses, including Dean Schuler and Heather Cobb, testified that O'Neil was *not* a dealer of Mitsubishi's forklifts and other equipment. Snap-on's expert, Jeff Mordaunt, testified as to the profits lost by Snap-on as result of O'Neil's scraping activities, damages which would not have occurred had O'Neil not breached the EULAs by accessing the site and scraping the data. The jury was presented with more than sufficient evidence to find that O'Neil had

breached the EULA and to award damages that reflect Snap-on's damages as a result of the breach.

### c. Trespass to Chattels

Snap-on's witnesses testified that Snap-on owned a possessory interest in its computer servers which host the Mitsubishi websites.  As noted above, numerous O'Neil witnesses testified that the scraper tool accessed those computer servers and deprived Snap-on of the ability to use them in the significant periods of time during which the servers were down.  The contracts between Snap-on and MCFA entered into evidence unequivocally demonstrate that MCFA did not have the ability to authorize O'Neil to trespass upon Snap-on's property.  Therefore, the jury was presented with more than sufficient evidence to find for Snap-on on its claim for trespass to chattels, and to award damages which reflect the time-value cost to Snap-on to restore the servers after each crash.

### d. Copyright Infringement

Finally, Snap-on introduced into evidence the copyright registration held by Snap-on, which unequivocally demonstrates that Snap-on holds a protected, copyrightable interest in the improvements made by Snap-on to the data supplied by Mitsubishi, as well as the other creative aspects of the database compilation.  O'Neil's own witnesses admitted to the jury that this copyrighted information was copied by O'Neil, and the jury heard evidence that it was in O'Neil's best interest to retain the enhancements made to the data for use in the content management system it was building for Mitsubishi.  As noted above, Snap-on's expert testified as to the profits lost by Snap-on that it would otherwise have realized through a continued business relationship with Mitsubishi wherein Snap-on would have retained the value of its

CLE - 2826217.1                                                8

copyright.[1]  Therefore, the jury was presented with sufficient evidence to find for Snap-on on its claim for copyright infringement and to award damages appropriately.

O'Neil argues, as it did unsuccessfully at trial, that its data scraper tool only accessed Snap-on's web servers which hosted the Mitsubishi websites, and not the Snap-on database servers on which the Mitsubishi parts data resided.  [Doc. 119 at p. 4.]  O'Neil argues that this distinction is relevant because Snap-on only held a copyright in the database and, therefore, O'Neil did not copy any of Snap-on's copyrighted information.  O'Neil's argument is a distinction without a difference.

As was developed during the cross examination of both Armando Monzon and Richard Kemmerer, the fact that the data scraper tool might not have directly accessed the database server is irrelevant because the web servers themselves accessed the database servers to scrape the data, all at the command and behest of O'Neil's data scraper tool.  O'Neil attempted at trial – and does so again here – to avoid Snap-on's claim for copyright infringement by arguing that the web server functioned as a liability shield through which O'Neil could not copy any copyrighted information.  Such an argument is not only nonsensical, it was already presented to and rejected by the jury.  O'Neil is not entitled to judgment as a matter of law.

    2. *No Questions of Law Remain to Be Decided*

O'Neil argues that, even though the jury heard and considered the evidence presented at trial and entered a general verdict in favor of Snap-on, this Court is now faced with "questions of law on which this court should now rule in O'Neil's favor."  [Doc. 119 at p. 9.]  O'Neil claims that these "questions of law" that the Court can substitute its judgment for include: (1) whether access by O'Neil to the Mitsubishi websites was authorized; (2) whether such authorization was

---

[1] O'Neil argues that Snap-on could not have suffered any more than $150,000 in lost profits based on the terms of Snap-on's contract with Mitsubishi. [Doc. 119.]  O'Neil also made this argument to the jury, which the jury was free to reject; the jury's verdict reflects an obvious rejection.

permitted under the Mitsubishi/Snap-on contracts; (3) whether Mitsubishi had a "possessory interest" to justify O'Neil's trespass upon Snap-on's chattels; (4) and whether the EULA restricted access to the Mitsubishi websites or whether it governed the NetCompass software. [*Id.*] O'Neil offers little more in this regard, and instead refers back to its previous briefing, all of which has been considered and ruled upon by the Court. [*Id* at p. 9-10.]

O'Neil's argument that the issues of contract interpretation and whether authorization could be given by Mitsubishi are questions of law is not correct. *Gencorp, Inc. v. American Int'l Underwriters*, 178 F.3d 804, 818 (6th Cir. 1999) (applying Ohio law); *Lerman v. Rock City Bar & Grille, Inc.*, Case No. 09-CV-2444, 2010 U.S. Dist. LEXIS 50293, at *14 (N.D. Ohio May 21, 2010) ("Once a finding of [a contract's] ambiguity is made, interpretation of the contract will generally become a question of fact for the jury."); *Lindsay v. Yates*, 498 F.3d 434, 442 (6th Cir. 2007) (*rev'd on other grounds*) ("whether JoAnn Yates actually authorized Brent to arrange for the sale of the Eckert Road property, and what the scope of that authority was, are questions of fact that cannot be resolved at the pleading stage").

The jury was presented with sufficient evidence to conclude that O'Neil was liable for violations of the CFAA, breach of contract, and trespass to chattels. In fact, this Court explicitly ruled that sufficient evidence had been presented to the jury on these claims when it denied O'Neil's motions for directed verdict and for judgment as a matter of law at trial. [*See* 77 at p. 12: "Looking to Snap-on's contracts with Mitsubishi, a genuine dispute of material fact exists as to Mitsubishi's actual ability to authorize O'Neil's activities as well as to the reasonableness of O'Neil's belief that Mitsubishi could authorize it."] The fact that the jury ruled in favor of Snap-on does not mean that O'Neil can now frame the issue as a question of law on which this Court can now rule.

Issues related to the contracts between Snap-on, O'Neil, and Mitsubishi, as well as whether Mitsubishi could authorize O'Neil to scrape data from the Snap-on servers (the fundamental issue in dispute at trial) were questions of fact to be decided by the jury, as the Court implicitly held in both denying O'Neil's motion for summary judgment and denying O'Neil's motions for directed verdict and judgment as a matter of law. These issues were appropriately questions of fact within the jury's province at trial, and the jury answered them by rendering a general verdict in favor of Snap-on.[2] As such, O'Neil's renewed motion for judgment as a matter of law must be denied.

## CONCLUSION

For the foregoing reasons, Snap-on respectfully requests that this Court deny O'Neil's motions for new trial, remittitur, and judgment as a matter of law.

Respectfully submitted,

HAHN LOESER & PARKS LLP

By: /s/ R. Eric Gaum
R. Eric Gaum (Ohio Reg. No. 66,573)
Amanda H. Wilcox (Ohio Reg. No. 73,832)
200 Public Square, Suite 2800
Cleveland, Ohio 44114
216-621-0150 (phone)
330-864-7986 (fax)
regaum@hahnlaw.com (e-mail)
awilcox@hahnlaw.com (e-mail)

and

---

[2] As discussed above with respect to O'Neil's motion for a new trial, the jury's general verdict prevents the parties and the Court from knowing on which claims the jury did, or did not, find in Snap-on's favor. Therefore, O'Neil's argument that one particular claim might not have been supported by sufficient evidence is irrelevant; in order to succeed on its renewed motion for judgment as a matter of law, O'Neil would have to demonstrate that **none** of Snap-on's claims were supported by sufficient evidence. As demonstrated throughout, this is a showing that O'Neil has not and cannot make.

                                        Phillip G. Eckenrode (Ohio Reg. No. 84,187)
                                        65 East State Street, Suite 1400
                                        Columbus, Ohio 43215
                                        614-233-5147 (phone)
                                        614-233-5194 (fax)
                                        peckenrode@hahnlaw.com (e-mail)

                                        *Counsel for Plaintiff Snap-on Business Solutions, Inc.*

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that on this 8th day of July, 2010, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to the following counsel by operation of the Court's electronic filing system.

Alan B. Parker
REMINGER CO., L.P.A.
1400 Midland Building
101 Prospect Avenue, West
Cleveland, Ohio 44115
aparker@reminger.com

Matthew L. Schrader
REMINGER CO., L.P.A.
65 East State Street, 4th Floor
Capitol Square
Columbus, Ohio 43215
mschrader@reminger.com

*Counsel for Defendant*
*O'Neil & Associates, Inc.*

                                        /s/ R. Eric Gaum
                                        One of the Attorneys for Plaintiff
                                        Snap-on Business Solutions, Inc.